THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**INÉS MARÍA JELÚ IRAVEDRA,**

   **Plaintiff,**

   vs.

**MUNICIPALITY OF GUAYNABO et al.,**

   **Defendants.**

**Civil No. 16-1585 (ADC)**

**OPINION AND ORDER**

I. **Introduction and procedural background**

This case entails a claim by plaintiff Inés María Jelú Iravedra ("Jelú") for sex-based discrimination, sexual harassment, retaliation, and vicarious tort liability against her former employer, the Municipality of Guaynabo ("the Municipality"), under federal and Puerto Rico laws.[1] **ECF No. 1** ¶¶ 2.1-2.4, 5.1-5.19. She also raises a tort claim against the alleged sexual harasser, co-defendant Héctor O'Neill-Rosa ("O'Neill-Rosa") under Article 1802 of the Civil Code of Puerto Rico. *Id*. at ¶¶ 2.3, 5.20-5.26.[2] O-Neill-Rosa sought to have Jelú's tort claim dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). **ECF Nos. 29, 89**. The Court denied O'Neill-Rosa's request for dismissal, inasmuch as the complaint's allegations

---

[1] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981 et seq.; Act No. 17 of April 22, 1988, tit. 29, §§ 155 et seq. ("Law 17"); Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 et seq.; Act No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §§ 1321 et seq.; and Article 1803 of the Civil Code of Puerto Rico, as amended, P.R. Laws Ann. tit. 31, § 5142.

[2] P.R. Laws Ann. tit. 31, § 5141.

demonstrate a common nucleus of operating facts that comprise her federal and Puerto Rico law claims against the Municipality of Guaynabo and O'Neill-Rosa, thus conferring upon the Court supplemental jurisdiction over all of Jelú's claims. **ECF No. 89.** Furthermore, the Court granted O'Neill-Rosa's motion to remand to the Puerto Rico Court of First Instance his tort claim against Jelú for damages due to alleged slander, holding pursuant to 28 U.S.C. 1441(a) that Jelú had improperly removed the case. **ECF Nos. 47, 90.**

The parties conducted extensive discovery, and both co-defendants O'Neill-Rosa and the Municipality filed motions for summary judgment under Fed. R. Civ. P. 56 ("Rule 56"). **ECF Nos. 124, 153**. This Opinion and Order comprises the adjudication of O'Neill-Rosa's motion for summary judgment, regarding which the following motions are before this Court: (i) O'Neill-Rosa's motion for summary judgment, memorandum of law, and statement of uncontested facts, **ECF Nos. 124, 136;** (ii) Jelú's opposition to O'Neill-Rosa's motion for summary judgment, memorandum in support of opposition, response to O'Neill-Rosa's statement of uncontested facts, and statement of additional facts, **ECF Nos. 151, 160, 161**; (iii) O'Neill-Rosa's reply to Jelú's opposition, **ECF No. 193**; and (iv) Jelú's surreply to O'Neill-Rosa's reply, **ECF No. 190.** Having thoroughly considered the aforementioned filings, the Court **DENIES** O'Neill-Rosa's motion for summary judgment for the reasons discussed below.

II.   **Standard of Review**

Under Fed. R. Civ. P. 56 ("Rule 56"), "[s]ummary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (quoting the former Fed. R. Civ. P. 56(c)). While Rule 56 was amended, effective December 1, 2010, "[t]he substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki*, 629 F.3d 49, 53 n.2 (1st Cir. 2010) (citing Fed. R. Civ. P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section, which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed. R. Civ. P. 56(c), with *id*. R. 56(f).

When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005). However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly supported motion for summary judgment. *Tropigas de Puerto Rico v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). Thus, the Court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)). In addition, the "absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial." *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp.2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303,

310 (1st Cir. 2001)). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson*, 522 F.3d at 175 (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez*, 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Furthermore, as stated by the U.S. Supreme Court, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. The trial court may not grant "summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id*. (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948)).

**III.   Factual Background**

Except as otherwise noted, the Court derives the following factual summary from O'Neill-Rosa's statement of uncontested material facts, Jelú's response to O'Neill-Rosa's statement of uncontested facts, and Jelú's statement of additional facts. **ECF Nos. 136-1, 161**.

Furthermore, as required under Rule 56, "we construe the evidence in the light most flattering to the nonmovants," here, Jelú, "and indulge all reasonable inferences in [her] favor." *See Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).

According to Jelú, she first met O'Neill-Rosa during the summer of 2012 through her involvement with the New Progressive Party ("NPP"). **ECF No. 161-1** at 59. Specifically, "[s]he belonged to a group of NPP [a]ttorneys and was very active politically." *Id*. at 19. Jelú served as an elections polling officer and went "to the Electoral Committee [of then Guaynabo Mayor Héctor O'Neill-García] to attend political and legal matters and activities almost every month, as part of her duties as an NPP official," among other political activities on behalf of the NPP in Guaynabo. *Id*. Former Mayor Héctor O'Neill-García ("Mayor O'Neill-García") is co-defendant O'Neill-Rosa's father and, since 2008, O'Neill-Rosa managed his father's mayoral campaign. *Id*. at 58.

Jelú alleges that when she and O'Neill-Rosa first met, he offered her a job as an attorney at the Commonwealth of Puerto Rico's Youth Affairs Office ("YAO"), which he ran at the time. *Id*. at 59. She accepted the job at the YAO, where she worked for only two weeks, during which Jelú claims O'Neill-Rosa made unwanted sexual advances against her, including hugging her forcibly and touching her buttocks. *Id*. "Plaintiff did not report the sexual harassment to anyone . . . out of fear and the shame she felt." *Id*. at 9.

After she left the YAO, Jelú applied for and was offered a position as Attorney II in the Legal Division of the Municipality, where she started to work on July 17, 2012. *Id*. at 13. She

alleges that the work spaces she occupied during her tenure there were in relatively secluded locations of Old City Hall, away from secretaries and other attorneys and accessible through a "skywalk" that allowed for bypassing the main entrance and the Legal Division's reception area. *Id*. at 26. She further avers that even though O'Neill-Rosa was not an employee of the Municipality, he had a municipal employee identification card that gave him access to its working areas. *Id*. Jelú alleges that he visited the offices of the Municipality, including the Legal Division, and that his visits were more frequent in the months prior to the general elections, during which he went there at least once a week after 4:00 p.m. *Id*. at 26-27.

> According to Jelú,
>
> Commencing shortly after Jelú was hired by the Municipality on July 17, 2012, and until she submitted her written sexual harassment grievance to Vice-Mayor Lozada on July 13, 2015, O'Neill-Rosa subjected her to a pattern of unwanted sexual advances, consisting of the following acts, which occurred, on average, two to five times a month and in an uninterrupted manner: lustful glances at her body and sexual gestures with his tongue or by biting his lips; profane remarks of a sexual nature; explicit invitations to have sex; stalking and persecution; constant calls and text messages to her cellphone; and, lascivious physical contacts. Additionally, O'Neill-Rosa repeatedly told Jelú that if she did not agree to his sexual advances the Municipality was going to fire her, because he influenced the decisions of his father, the Mayor O'Neill-García. At all times, throughout those three years, Jelú clearly indicated to O'Neill-Rosa that his verbal and physical advances were not welcome. Nevertheless, he would ignore her and continue with his verbal and physical advances of a sexual nature towards her, with the same frequency and persistence.

*Id*. at 60-61. The alleged acts took place at the Municipality's Legal Division, NPP Electoral Committee for the Mayor of Guaynabo, other Municipal offices, and the Old City Hall's parking lot. *Id*. at 60-67. Furthermore, Jelú claims that O'Neill-Rosa stalked her in political activities and

"lurked around her home and the beauty salon which she attended." *Id*. at 66. She also alleges that, starting in the summer of 2012, O'Neill-Rosa called and sent her text messages constantly and at all hours, for which "[i]n 2015, [she] blocked O'Neill-Rosa's telephone number from her cell phone." *Id*. Jelú avers that she "could not do it earlier because she was an Elections Official and had to be receiving texts and calls from O'Neill-Rosa and other party officials to carry out her duties. It was because of him that she quit being an Electoral Official." *Id*.

In 2014, a vacancy for the position of Attorney III became available in the Municipality. *Id*. at 65. Jelú applied for and was offered the position, for which she started working in the same in December 2014. *Id*. According to Jelú, both before and after she got that job, O'Neill-Rosa solicited sex from her in exchange for his purported influence in her having obtained the position, and later as to her remaining in it. *Id*.

In her deposition, "Jelú categorically testified that she never had an intimate or sexual relationship with O'Neill-Rosa; that she never engaged in any sort of sexual contact with him, apart from his unwelcome and inappropriate approaches to her; and that she never socialized with him." *Id*. at 54. Moreover, Jelú avers that she "did not identify any witness as to any such acts because O'Neill-Rosa engaged in such misconduct inside her office when there was nobody present to observe his misbehavior." *Id*. at 26. Nonetheless, she alleges that on several occasions from July 2012 and until July 2015, she complained verbally about O'Neill-Rosa's sexual harassment to three successive directors of the Legal Division of the Municipality, as well as to the Municipality's head of Human Resources, Eduardo R. Faría-Rodríguez ("Faría"). *Id*. at 67.

Jelú further asserts that the Municipality did not take any action, and that on the contrary, two of the three directors of the Legal Division to whom she complained—Héctor Hoyos and Ana Quintero—made derogatory remarks in reaction to her complaints. *Id*. at 67-68.

On July 13, 2015, Jelú filed a written complaint of sexual harassment against O'Neill-Rosa with Aurialis Lozada, Vice Mayor of the Municipality. *Id.* at 68. On July 29, 2015, she filed a charge of discrimination with the Equal Employment Opportunity Commission based on the same grounds as the aforementioned written complaint. *Id.* at 50. In light of Jelú's written complaint and charge, the Municipality hired Miguel A. Romero to conduct an investigation and render a report. *Id*. at 50-53. On October 29, 2015, after conducting interviews of the parties and witnesses, Romero issued his report, concluding that the sexual harassment alleged by Jelú had not occurred. *Id*. Jelú deems that Romero's investigation was executed in violation of the provisions of the Municipality's sexual harassment policy and her due-process rights, and was biased in favor of O'Neill-Rosa. *Id*.

O'Neill-Rosa vehemently denies ever having engaged in sexual harassment against Jelú. **ECF No. 136** at 6-12. In his version of the facts, "he had a romantic tryst with the [p]laintiff, which included at least one sexual encounter, and although sporadic, commenced sometime in the year 2011 and lasted approximately until December 2014." **ECF No. 136-1** at 33-34. He further avers that he "proceeded to retreat from further pursuit of this relationship when he learned that [p]laintiff had become involved with the Director of Human Resources for the Municipality, Mr. Faría-Rodríguez." **ECF No. 136** at 9-10.

O'Neill-Rosa argues that plaintiff's allegations of sexual harassment are so incredible that "her version of the story should be disregarded, thus warranting judgment as a matter of law." *Id.* at 7. Specifically, he asserts,

> Central to Plaintiff's story is the allegation that O'Neill-Rosa called or texted her, almost on a weekly basis, uninterruptedly during the [r]elevant [p]eriod. But the evidentiary record totally disproves these allegations in a manner that renders any other evidence purporting to contradict such records merely as creating "metaphysical doubt" as to the facts, long recognized as insufficient to avoid summary judgment. While it is hard to precise Plaintiff's motivations for bringing these serious, obviously false allegations against O'Neill-Rosa, it is incontrovertible that it is only after she is notified of a poor job evaluation in July 2015, that for the first time she complains in writing about the 72 to 180 alleged separate incidents of unwanted sexual advances during a three-year period.

*Id.* at 10 (citations omitted). In support of his contention that there is no genuine issue of fact that would preclude summary judgment in his favor in this case, O'Neill-Rosa avers the following:

(i) Although Jelú alleges that she left the YAO in 2012 after just two weeks of having started to work there due to O'Neill-Rosa's sexual harassment, she did not report the same to anyone until she raised such allegations as part of the instant case. **ECF No. 136-1** at 6. And, notwithstanding her allegations of sexual harassment against O'Neill-Rosa, she continued to participate in NPP political events of Mayor O'Neill-García, and inquired with Alba Alvelo, said mayor's wife, as to job opportunities at the Municipality. *Id*. at 6-7.

(ii) O'Neill-Rosa's cell phone records do not support her claim of incessant calls and texts from him and show, on the contrary, that she initiated multiple calls and texts to him.

        He asserts that his cell phone records show no evidence of calls from him to her from July 2013 to February 2014, July to September 2014, December 2014, or at any time after November 15, 2014. **ECF No. 136** at 14.

(iii) In spite of Jelú's allegation of repeated incidents of sexual harassment by O'Neill-Rosa at various locations, "she is unable to specifically identify even a single person that witnessed any such act." *Id*. at 15.

(iv) Notwithstanding Jelú's allegation as to O'Neill-Rosa's frequent visits to the Municipality's Legal Division, the witnesses from said division declared that they either never saw him there or only saw him a few times during the pertinent time period. *Id*.

(v) O'Neill-Rosa deem as contradictory to Jelú's allegations the fact that her work performance was excellent up until she was promoted to the position of Attorney III, during which time she allegedly suffered severe emotional distress as a result of O'Neill-Rosa's alleged sexual harassment. *Id*. at 16.

(vi) In spite of her alleged emotional damages resulting from O'Neill-Rosa's actions against her, "she found the time and energy to become involved in a sentimental relationship with Mr. Faría." *Id*.

(vii) "Despite having become involved in [a] sentimental relationship with Mr. Faría during the time period of the alleged sexual harassment by O'Neill-Rosa , . . . she never informed [Faría] that she was being subjected, uninterruptedly, by O'Neill-Rosa to

        unwanted sexual advances," even though he was the Municipality's Human Resources Director. *Id*.

(viii)   Notwithstanding O'Neill-Rosa allegedly having conveyed to Jelú that her continued employment in the Municipality of Guaynabo was contingent on her acquiescence to his sexual overtures, she remained employed despite not acquiescing, was promoted to Attorney III in December 2014, and was never disciplined prior to that promotion. *Id*.

(ix)   Even though Jelú claims to have been a victim of sexual harassment by O'Neill-Rosa repeatedly over years until 2015, she never filed a claim against him "with the police, the WAO [Women's Advocate Office, where she had worked] or other legal authority." *Id*. at 17.

(x)   In spite of the alleged frequency of O'Neill-Rosa's calls and texts to Jelú since 2012, she did not seek to block his number or file a claim against him until 2015. *Id*.

In light of the above, O'Neill-Rosa affirms that "[t]he evidentiary record, taken as a whole, undeniably disproves plaintiff's story." *Id*.

      Jelú denies O'Neill-Rosa's version of the facts summarized above, arguing that the same is based on "misconstructions of the evidentiary record, deliberate distortions of plaintiff's claim, inadmissible evidence, outlandish theories, and contested evidence." **ECF No. 160** at 1. She also asserts that even though O'Neill-Rosa claims to have had a consensual, intimate relationship with her, "[h]e is unable to produce a single shred of physical evidence to support this

allegation," nor is there "a single witness to such alleged three-year relationship." *Id*. Additionally, Jelú avers that as evidenced in his deposition testimony, he knows very little about her personal life, tastes, and preferences, which she deems to contradict his allegation that they had a consensual, intimate relationship. **ECF No. 161-1** at 70. Furthermore, she contests the admissibility under the Federal Rules of Evidence 401, 402, 403, 404(b), 412, 602, 608, 801, 802, and 1006 of various documents, information and testimony used by O'Neill-Rosa in support of his motion for summary judgment. **ECF No. 161-1** at 2-6, 10-12, 22-23, 29-32, 39-46. The contested evidence includes information about Jelú's personal background as a single mother, alleged relationship with Faría, a prior claim of sexual harassment against a university professor, employment history at the Women's Advocate Office, summaries of O'Neill-Rosa's cell phone records, and witness testimony such as that of former colleague Jomarie Cardona Cosme.[3] *Id*.

## IV.   Discussion

O'Neill-Rosa brings forth three main arguments in his motion for summary judgment: (i) Jelú's sole claim against him is time barred; (ii) there is no genuine issue of material fact that precludes granting summary judgment in his favor; and (iii) Jelú's tort claim of intentional

---

[3] Jelú brings these evidentiary challenges as part and in support of her response to O'Neill-Rosa's statement of uncontested material facts. **ECF No. 161-1** at 2-6, 10-12, 22-23, 29-32, 39-46. As reflected in the factual-background section of this Opinion and Order, the Court performed a comprehensive review of the totality of the motions and exhibits presented by the parties. Nonetheless, it did not consider any of the evidence whose admissibility is being contested as part of its adjudication on the merits of O'Neill-Rosa's summary judgment motion under Fed. R. Civ. P. 56 standards. The Court reached its conclusions about the existence of multiple issues of fact that warrant the denial of O'Neill-Rosa's summary judgment motion from the rest of the voluminous pleadings, motions, and exhibits whose admissibility is not being contested. As mentioned herein, the Court will adjudicate evidentiary issues of admissibility opportunely in preparation for trial.

infliction of emotional distress "does not meet doctrinal standards" as a matter of law in light of the evidence in the record. **ECF No. 124** at 2; *see also* **ECF No. 136**.

### 1. Plaintiff's claim is not time-barred.

Jelú's sole cause of action against O'Neill-Rosa is a tort action under Article 1802, based on her allegation that he subjected her to a pattern of unwanted sexual advances both at her job with the Municipality and outside the workplace. **ECF Nos. 1**, **161**. She claims that O'Neill-Rosa's actions amounted to intentional infliction of emotional distress that caused her actionable damages. *Id*. O'Neill-Rosa contends, in essence, that Jelú's claim is time barred under the one-year statute of limitations pursuant to Article 1802, because "[p]laintiff fails to allege any specific facts that occurred within the one-year period prior to filing her [c]omplaint, to wit, from March 30, 2015 to March 31, 2016." **ECF No. 136** at 20.

"When exercising . . . supplemental jurisdiction over state law claims, [the Court applies] substantive state law." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 56 (1st Cir. 2013). In tort claims under Article 1802, the one-year limitations period "ordinarily begins to run at the time that the aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it." *González Figueroa v. J.C. Penney P.R., Inc.*, 568 F.3d 313, 318 (1st Cir. 2009); *see also* P.R. Laws Ann tit. 31, §§ 5298, 5299. "However, in the case of a continuing tort, the statute of limitations is tolled as the tort is constantly recurring." *M.R. (Vega Alta), Inc., v. Caribe Gen. Elec. Prod.*, 31 F. Supp.2d 226, 239 (D.P.R. 1998); *see also Rivera Ruiz v. Municipio de Ponce*,

196 D.P.R. 410 (2016), 2016 WL 5373753 (P.R.), 2016 TSPR 197 (certified translation provided by plaintiff at **ECF No. 198**).

In the instant case, Jelú alleged in her complaint, and subsequently reiterated in her deposition under oath, that she was subject to a pattern of unwelcome sexual advances by O'Neill-Rosa comprising of acts that spanned from July 2012 until July 2015. **ECF Nos. 1; 161-1** at 24-25, 60-61. As to the most recent alleged incident, "[p]lainitff testified that in the week of July 6-10, 2015, [O'Neill-Rosa] was harassing her and demanding that she stay after four 4:00 p.m. in her office to seek satisfaction to his sexual needs. . . . In the summer of 2015 O-Neill-Rosa's intention to have sexual relations with [her] while [she] was in her probatinary period [as Attorney III] had intensified." **ECF No. 161** at 8.

The Court holds that Jelú's allegations of the incidents in question, the last of which occurred in July 2015 according to her deposition testimony, are specific enough to entail an actionable tort claim and effectively toll the one-year statute of limitations under Article 1802 in relation to the instant complaint, filed on March 31, 2016. *See González Figueroa*, 568 F.3d at 318; *M.R. (Vega Alta)*, 31 F. Supp.2d at 239. *See also Hernández-Loring v. Universidad Metropolitana*, 233 F.3d 49, 55-56 (1st. Cir. 2000) (plaintiff's deposition testimony and affidavit entailing two alleged incidents that were date-specific and others that were more general comprised an actionable claim of sex-based hostile environment). Accordingly, Jelú's claim of continuing tort damages against O'Neill-Rosa for the alleged sexual harassment inflicted upon her is not time barred.

### 2. Genuine issues of material facts preclude summary judgment.

As established by the First Circuit,

> When intent is an issue, we have held that our review [of a grant of summary judgment] will be most searching since these questions are most suited for jury determinations. Nonetheless, we will not refuse to affirm, even in such cases, when the non-movant rests merely upon unsupported allegations and speculations. Therefore, the courts examining the evidence must insist that the party opposing summary judgment go beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admission on file designate specific facts showing that there is a genuine issue for trial.

*Petitti v. New Eng. Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990) (citations and internal quotation marks omitted). In keeping with the above standard and upon a careful review of the case's record, the Court holds that Jelú has met her burden to establish that there are genuine issues of material facts that preclude summary judgment as to the tort claim at hand.

We hereby incorporate by reference the factual summary above. Jelú and O'Neill-Rosa proffer opposing versions of material facts in relation to Jelú's tort claim, and both versions are generally sustained by the parties' respective deposition testimonies under oath. **ECF Nos. 151-2, 151-5**. In essence, Jelú alleges that O'Neill-Rosa submitted her to a pattern of unwanted sexual advances from the summer of 2012 until July 2015 that took place at the Legal Division of the Municipality and elsewhere, causing her severe emotional damages that she asserts entail an actionable tort for intentional infliction of emotional distress. **Id. at 161-1** at 24-25, 60-61. Furthermore, she states that she "did not identify any witness as to any such acts of sexual

harassment because O'Neill-Rosa engaged in such misconduct inside her office when there was nobody present to observe him." *Id.* at 26. She also emphatically denies ever having had a consensual romantic relationship with O'Neill-Rosa. *Id.* at 54. Conversely, according to O'Neill-Rosa, he never engaged in unwanted sexual advances against Jelú, and on the contrary, he asserts that they had a consensual "sporadic romantic tryst" which started in 2011 and lasted through the end of 2014, when he allegedly learned that Jelú had become involved with Faría. **ECF No. 136** at 9; *see also id.* at 9-12. Moreover, O'Neill-Rosa avers that they never publicly disclosed their relationship. **ECF No. 151** at 81-82.

Accordingly, the Court deems that the tort claim at hand is not apt for summary disposition under Fed. R. Civ. P. 56, insofar as Jelú and O'Neill-Rosa each attest to opposite versions of the facts, thus warranting credibility determinations and weighing of the evidence for the case's adjudication. It is well settled that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citations and internal quotation marks omitted). In other words, "[t]he role of the trial judge at the summary judgment stage is not to . . . weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Hodgens. v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998) (citations and internal quotation marks omitted) (omission in original). Accordingly, trial courts should act

with caution in granting summary judgment, and should deny the same in a case where it deems that "the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. This rule has been applied by the First Circuit in cases of sexual harassment and other forms of employment discrimination. *See, e.g., Soto-Feliciano v. Villa Cofresí Hotels, Inc.*, 779 F.3d 19, 30 (1st Cir. 2015) (age discrimination); *Vera v. McHugh*, 622 F.3d 17, 26-27 (1st Cir. 2010) (sexual harassment and retaliation); *Billings v. Town of Grafton*, 515 F.3d 39, 47-52 (1st Cir. 2008) (sexual harassment and retaliation). *See also Ríos v. Municipality of Guaynabo*, 938 F.Supp.2d 235, 247-249 (D.P.R. 2013) (sexual harassment and retaliation).

In relation to Jelú's tort claim for intentional infliction of emotional distress, O'Neill-Rosa contends that in light of the case's record, she is unable to establish the essential elements of the cause of action. **ECF No. 136** at 20-25. As held by the First Circuit, a tort claimant in Puerto Rico for intentional infliction of emotional distress must be able to establish the following: "1) that the defendant engaged in extreme and outrageous conduct; 2) that such conduct was intended to cause the plaintiff severe emotional distress, or was done with reckless disregard for the plaintiff's emotional state; 3) that the plaintiff suffered severe emotional distress; and 4) that the severe distress is causally related to the extreme and outrageous conduct." *Soto-Lebrón v. Fed. Express Corp.*, 538 F.3d 45, 57 (1st Cir. 2008). According to O'Neill-Rosa,

> Assuming, *arguendo*, that by March 30, 2015, O'Neill[-]Rosa had subjected the Plaintiff to 66 to 165 unwanted sexual acts, said assumption, *coupled with the cell phone records evidencing multiple calls by her to him*, can only support one conclusion as a matter of law . . . to wit, that by March 30, 2015 she had communicated consent to O'Neil[-]Rosa's alleged outrageous conduct. This is particularly true when

> O'Neill[-]Rosa knew that Plaintiff is an attorney: (a) whose known prior employment was at the Commonwealth's Women's Advocate Office and (b) who allegedly, after feeling harassed by O'Neill-Rosa at her preceding employment, had no difficulty in resigning such position immediately.

**ECF No. 136** at 23-24 (emphasis in the original).

Jelú contends that, on the contrary, the record undoubtedly establishes a tort claim for intentional infliction of emotional distress. **ECF No. 161** at 17-22. She avers that said cause of action's elements are evident in the acts she alleged O'Neill-Rosa committed against her over a period of three years, including: "lustful glances at her body and sexual gestures; profane sexual remarks; sexual propositioning; uninvited touching; lascivious acts (fondling her breasts, butt and genitalia); exposure of his penis; stalking and persecution; and, constant calls and text messages to her cellphone." *Id*. at 2. According to Jelú, "[t]he large volume and repetition of wrongful acts detailed above crystallized a viable claim for intentional infliction of emotional distress." *Id*. at 22.

Thus, clearly, there are genuine issues of material facts that warrant a jury trial to determine what did or did not transpire between Jelú and O'Neill-Rosa; if the actions met the elements of a tort action for intentional infliction of emotional distress; and if so, the damages suffered by Jelú, if any, as a result of those actions. In that respect, the Court holds in abeyance the evidentiary objections and related considerations raised by the parties in relation to the dispositive motion at hand. *See* **ECF No. 161, 161-1, 190, 193**. Evidentiary issues will be entertained opportunely by the Court in preparation for trial.

### III. Conclusion

In light of the above, O'Neill-Rosa's motion for summary judgment under Rule 56, **ECF No. 124**, is hereby **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th of day of March, 2018.

                                                  **S/AIDA M. DELGADO-COLÓN**
                                                  **Chief United States District Judge**