# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INÉS MARÍA JELÚ IRAVEDRA,<br><br>    Plaintiff,<br><br>vs.<br><br>MUNICIPALITY OF GUAYNABO, et al.,<br><br>    Defendants. | Civil No. 16-1585 (ADC) |

## OPINION AND ORDER

### I.    Introduction and procedural background

This case entails a claim by plaintiff Inés María Jelú Iravedra ("Jelú" or "plaintiff") for gender-based discrimination, sexual harassment in the form of hostile work environment, retaliation, and vicarious tort liability against her former employer, the Municipality of Guaynabo ("the Municipality"), under federal and Puerto Rico laws.[1] **ECF No. 1 ¶¶ 2.1-2.4, 5.1-5.19.** She also raises a tort claim against the alleged sexual harasser, co-defendant Héctor O'Neill-Rosa ("O'Neill-Rosa") under Article 1802 of the Civil Code of Puerto Rico. *Id*. at ¶¶ 2.3, 5.20-5.26.[2] O-Neill-Rosa sought to have Jelú's tort claim dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). **ECF Nos. 29, 89.** The Court denied O'Neill-Rosa's

---

[1] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981 et seq.; Act No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 §§ 155, et seq. ("Law 17"); Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 §§ 146, et seq.; Act No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29 §§ 1321 et seq.; and Article 1803 of the Civil Code of Puerto Rico, as amended, P.R. Laws Ann. tit. 31 § 5142.

[2] P.R. Laws Ann. tit. 31 § 5141.

request for dismissal, inasmuch as the complaint's allegations demonstrate a common nucleus of operating facts that comprise her federal and Puerto Rico law claims against the Municipality of Guaynabo and O'Neill-Rosa, thus conferring upon the Court supplemental jurisdiction over all of Jelú's claims. **ECF No. 89.** Furthermore, the Court granted O'Neill-Rosa's motion to remand to the Puerto Rico Court of First Instance his tort claim against Jelú for damages due to alleged slander, holding pursuant to 28 U.S.C. 1441(a) that Jelú had improperly removed the case. **ECF Nos. 47, 90.**

The parties conducted extensive discovery, and both co-defendants O'Neill-Rosa and the Municipality filed motions for summary judgment under Fed. R. Civ. P. 56 ("Rule 56"). **ECF Nos. 124, 153**. On March 30, 2018, the Court issued an Opinion and Order whereupon it denied O'Neill-Rosa's motion for summary judgment, finding that there are genuine issues of fact that preclude summary judgment as to the alleged sexual harassment. **ECF No. 213**. The present Opinion and Order comprises the adjudication of the Municipality's motion for summary judgment, regarding the following motions now before this Court: (i) the Municipality's motion for summary judgment, memorandum of law, and statement of uncontested facts, **ECF Nos. 153; 156, 158**; (ii) Jelú's opposition to the Municipality's motion for summary judgment, memorandum in support of opposition, response to the Municipality's statement of uncontested facts, and statement of additional facts, **ECF Nos. 196, 197, 200, 214, 217, 224**; (iii) the Municipality's reply to Jelú's opposition, **ECF Nos. 218, 219, 231**; and (iv) Jelú's surreply to the Municipality's reply, **ECF Nos. 229, 230.** Having thoroughly considered the aforementioned

filings, the Court **DENIES** the Municipality's motion for summary judgment for the reasons discussed below.[3]

## II.     Standard of Review

Under Fed. R. Civ. P. 56, "[s]ummary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (quoting the former Fed. R. Civ. P. 56(c)). While Rule 56 was amended, effective December 1, 2010, "[t]he substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki*, 629 F.3d 49, 53 n.2 (1st Cir. 2010) (citing Fed. R. Civ. P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section, which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed. R. Civ. P. 56(c), with *id.* R. 56(f).

When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all

---

[3] Both Jelú and the Municipality objected the admissibility of some evidence proffered by the other in relation to the Municipality's summary judgment motion. **ECF Nos. 200, 218, 229**. As held in O'Neill-Rosa's motion for summary judgment, the Court did not consider any of the evidence whose admissibility is being contested as part of its adjudication on the merits of the Municipality's summary judgment motion under Fed. R. Civ. P. 56 standards. The Court reached its conclusions about the existence of multiple issues of fact that warrant the denial of the Municipality's summary judgment motion from the rest of the voluminous pleadings, motions, and exhibits whose admissibility is not being contested. That includes relevant portions of deposition testimony under oath by Jelú, O'Neill-Rosa, and fact witnesses. *See* exhibits to **ECF Nos. 156 and 197**. The Court will adjudicate evidentiary issues of admissibility opportunely in preparation for trial.

reasonable inferences." *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005). However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly supported motion for summary judgment. *Tropigas de Puerto Rico v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). Thus, the Court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) (internal quotation marks omitted)). In addition, the "absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial." *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp.2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001)). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson*, 522 F.3d at 175 (citing *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez*, 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Furthermore, as stated by the

U.S. Supreme Court, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. The trial court may not grant "summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id*. (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948)).

III.    Discussion

 A.  The Hostile Work Environment Claim

 1.  Applicable Law

  Title VII provides a private right of action against any employer who "discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). As the First Circuit has held,

> [S]exual harassment is a form of sex discrimination, the Supreme Court tells us— by committing or tolerating sexual harassment against an employee, an employer has effectively altered the terms or conditions of the victim's job. One type of sexual harassment . . . involves "bothersome attentions or sexual remarks" so "severe or pervasive" that they create a "hostile work environment." . . . [B]ecause . . . employers must provide their personnel with a harassment-free workplace, they may be on the hook for a nonemployee's sexually-harassing behavior under certain conditions—one of which being that they knew or should have known about the harassment and yet failed to take prompt steps to stop it.

*Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136–37 (1st Cir. 2013) (citations and internal quotation marks omitted); *Rodríguez–Hernández v. Miranda–Vélez,* 132 F.3d 848, 854–55 (1st Cir. 1998);

*Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072–74 (10th Cir. 1998); 29 C.F.R. § 1604.11(e); 3 Lex K. Larson, *Employment Discrimination* § 46.07[4] (2d ed. 2011)).

Furthermore, Puerto Rico Law 100, akin to Title VII, provides that sexual harassment is a form of illegal discrimination by reason of sex, and Puerto Rico's Law 17 regarding sexual harassment in the workplace "is to be interpreted in *pari materia* with Law 100 and . . . largely tracks the language of the EEOC guidelines regarding hostile work environment claims." *Pérez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 26-27 n. 10 (1st Cir. 2011) (citing *Sánchez v. Elec. Power Auth.*, 1997 P.R. Offic. Trans. 878, 520 (P.R. Suprm. Ct. 1997)); *Matos Ortiz v. Puerto Rico*, 103 F.Supp.2d 59, 64–65 (D.P.R.2000) (citing *Suárez Ruiz v. Figueroa Colón*, 145 P.R. Dec. 142 (1998)); P.R. Laws Ann. tit. 29, § 155b. Given the considerable overlap between federal and Puerto Rico employment discrimination and sexual harassment law, the instant case's claims under federal and Puerto Rico law shall be analyzed jointly for the purpose of adjudicating the Municipality's motion for summary judgment. *See Id*.

The First Circuit Court of Appeals has established six elements that a plaintiff must prove to succeed in a sexually-based hostile work environment claim:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Valentín-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir. 2006) (citing *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)). In cases where the sexual harassment does not result in a tangible employment action, an employer may invoke an affirmative defense to avoid vicarious liability, pursuant to U.S. Supreme Court decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), and *Ellerth*, 524 U.S. at 742. "This affirmative defense, the *Faragher-Ellerth* defense, requires a defendant employer to show both (1) that its own actions to prevent and correct harassment were reasonable and (2) that the employee's actions in seeking to avoid harm were not reasonable." *Agusty-Reyes v. Dept. of Educ. of Puerto Rico*, 601 F.3d 45, 53 (1st Cir. 2010) (citing *Chaloult v. Interstate Brands Corp.*, 540 F.3d 64, 66 (1st Cir. 2010) (internal quotation marks omitted)); *Ellerth*, 524 U.S. at 765, *Torres-Negrón v. Merck & Co.*, 488 F.3d 32, 40 n. 5 (1st Cir.2007); *Arrieta-Colón v. Wal-Mart*, 434 F.3d 75, 86 (1st Cir. 2006); 1 Barbara T. Lindemann et al., *Employment Discrimination Law*, 1365-76 (4th ed. 2007)).

There is no single test by which to determine whether a plaintiff has presented sufficient evidence to survive summary judgment on a hostile work environment sexual harassment claim. *See Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006). Courts analyze "all the circumstances," including "the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating as opposed to a mere offensive utterance, whether it unreasonably interfered with an employee's work performance, and the effect of the conduct on the employee's well-being." *Id.* Generally, "'[s]ubject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a

degree that a reasonable person would have felt that it affected the conditions of her employment." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002) (quoting *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002)).

>    **2.  Genuine Issues of Fact Preclude Summary Judgment as to Whether the Alleged Sexual Harassment Took Place.**

In the instant case, the parties' factual contentions about the alleged sexual harassment by O'Neill-Rosa against Jelú included in their filings related to the Municipality's summary judgment motion, are the same as in their filings regarding O'Neill-Rosa's motion for summary judgment. *See* **ECF Nos. 136, 156, 161, 197, 200, 219, 229, 230**. Accordingly, the Court hereby incorporates by reference the Court's factual account in its Opinion and Order adjudicating O'Neill-Rosa's summary judgment motion. **ECF No. 213** at 4-12. As held therein, Jelú and O'Neill-Rosa proffer opposing versions of material facts in relation to Jelú's allegations of sexual harassment, and both versions are generally sustained by Jelú's and O'Neill-Rosa's respective deposition testimonies under oath. **ECF Nos. 151-2, 151-5**.

In essence, Jelú alleges that even though O'Neill-Rosa was not an employee of the Municipality of Guaynabo, he managed the mayoral campaign of his father, then Mayor of Guaynabo Héctor O-Neill García ("Mayor O'Neill-García"), since 2008. **ECF Nos. 161-1** at 58. She further asserts that O'Neill-Rosa visited the offices of the Municipality, including the Legal Division, and that his visits were more frequent in the months prior to the general elections, during which he went there at least once a week after 4:00 p.m. *Id.* at 25-27. O'Neill-Rosa had a

municipal employee identification card that gave him access to its working areas while Jelú was on the job. **ECF Nos. 161-1** at 9-12; **197** at 73. Jelú alleges that O'Neill Rosa submitted her to a pattern of unwanted sexual advances from the summer of 2012 until July 2015 that took place at the Legal Division of the Municipality. **ECF Nos. 161-1** at 24-25, 60-61; **197** at 90-98. She claims that O'Neill-Rosa's acts created a hostile working environment that caused her severe emotional damages that she asserts entail an actionable tort for intentional infliction of emotional distress against O'Neill-Rosa and vicarious tort liability against the Municipality. *Id.; see also* **ECF Nos. 161** at 17-22; **200** at 31-47. Furthermore, she states that she "did not identify any witness as to any such acts of sexual harassment because O'Neill-Rosa engaged in such misconduct inside her office when there was nobody present to observe him." **ECF Nos. 161-1** at 26; **197** at 74. She also emphatically denies ever having had a consensual romantic relationship with O'Neill-Rosa. **ECF Nos. 161-1** at 54; **197** at 7-8.

Conversely, according to O'Neill-Rosa, he never engaged in unwanted sexual advances against Jelú, and on the contrary, he asserts that they had a consensual "sporadic romantic tryst" which started in 2011 and lasted through the end of 2014, when he allegedly learned that Jelú had become involved with Eduardo Faría ("Faría"), the Municipality's Human Resources Director at the time. **ECF Nos. 136** at 9; **161-1** at 9-12; **197** at 7-8. Moreover, O'Neill-Rosa avers that he and Jelú never publicly disclosed their relationship. **ECF Nos. 151** at 81-82**; 197** at 7-8.

In its motion for summary judgment, the Municipality contends that Jelú's version of the events "is simply so incredible and contradicted by the record that no reasonable jury could

believe it, and this Honorable Court should not adopt it for the purpose of ruling on the Municipality's dispositive motion." **ECF No. 153** at 21. However, pursuant to First Circuit standards and as decided in relation to O'Neill-Rosa's summary judgment motion, the Court holds that Jelú has met her burden to establish that there are genuine issues of material fact that preclude summary judgment regarding the alleged acts of sexual harassment by O'Neill-Rosa against her. **ECF No. 213** at 15-19; *see Anderson*, 477 U.S. at 255 (credibility determinations and weighing of evidence are functions for the jury at trial, not a judge on summary judgment); *Valentín-Almeyda*, 447 F.3d at 94; *O'Rourke*, 235 F.3d at 728; *U.S. v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004) (under the law of the case doctrine, "a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court"). Those issues of fact warrant a jury trial to determine what did or did not transpire between Jelú and O'Neill-Rosa; and whether the actions met the elements of a claim of sexual harassment in the form of hostile work environment.

### 3. Genuine Issues of Fact Preclude Summary Judgment as to the Municipality's Liability For O'Neill-Rosa's Alleged Acts.

The Municipality contends that even if the alleged acts by O'Neill-Rosa occurred, the Municipality is not liable for them pursuant to the *Faragher-Ellerth* defense summarized above. **ECF No. 153** at 21-27. Jelú was given a copy of its sexual harassment policy that requires a prompt, written, internal complaint by any municipal employee who is a victim of sexual

harassment on the job. *Id*. at 3, 24; **ECF No. 197** at 11. Furthermore, Jelú first filed a written internal complaint in July 13, 2015, even though she alleges that O'Neill's acts of harassment against her began in 2012. **No. 153** at 23-26. The Municipality asserts that Jelú's written internal complaint of July 2015 was the first time she ever put the Municipality on notice of the alleged sexual harassment. *Id*. Additionally, the Municipality avers that as soon as Jelú submitted her written complaint, it took immediate, proper action by ordering a formal investigation that was conducted by an external legal consultant, Miguel Romero ("Romero"). *Id.* at 8-9, 26-27. It also claims to have immediately executed internal precautions, "including prohibiting the entry of Mr. O'Neill-Rosa to the Legal Division, and having all meetings take place in conference rooms instead of the attorneys' offices." *Id.* at 8. Additionally, the Municipality asserts that upon receipt of Jelú's internal written complaint, Ms. Aurialis Lozada, Vice-Mayor of the Municipality at that time, "met with Mr. O'Neill-Rosa, and required him to return his City Hall access card, and instructed him that he was not to return to the Municipality of Guaynabo's facilities." *Id.* at 9. It is uncontested that the alleged sexual harassment against Jelú ceased in July 2015 after she presented her internal written complaint. *Id*. at 9; **ECF Nos. 156** at 12; **197** at 51.

As such, the Municipality argues that it is shielded from liability under the *Faragher-Ellerth* defense insofar as "nothing in the record establishes that the Municipality knew or should have known of the alleged harassment before Plaintiff's internal grievance on July 13, 2015, after which the Municipality took immediate corrective measures" that resulted in the end of the alleged acts. **ECF No. 153** at 22. Conversely, according to the Municipality, Jelú failed to comply

with her obligations under the Municipality's sexual harassment policy by failing to report the alleged sexual harassment until three years after she claims the harassment began. *Id*.

Jelú proffers an opposite version of the facts. **ECF No. 200** at 19-25. Specifically, she alleges that between July 2012 and July 2015, she verbally complained of O'Neill-Rosa's sexual harassment to Faría and to three successive directors of the Municipality's Legal Division- Héctor Hoyos, Denise Rodríguez ("Rodríguez"), and Ana Quintero ("Quintero")- to no avail. *Id*. As to Quintero, Jelú testified at her deposition that when she complained to Quintero of O'Neill-Rosa's alleged sexual harassment, Quintero responded "she knew the [m]ayor's sons well, that she and her husband had practically raised them. And that she didn't think that he would notice [Jelú] that much, that [Jelú] wasn't that fine. And that if [Jelú] didn't like [her] job, [Jelú] could just go work at a whorehouse." *Id*. at 24. Additionally, Jelú contends that she did not file a written complaint prior to July 2015, because she feared reprisal by the Municipality. *Id*. at 54. Specifically, according to Jelú, she

> did not lodge a <u>formal</u> complaint against the Mayor's son with the [Municipality's human resources office] because its [d]irector Faría simply did not want to deal with this matter and [its] Sub Director, Sandra Ramos ("Ramos"), was O'Neill-Rosa's former wife and mother of his five children. Instead, on July 13, 2015, Plaintiff complained in writing about O'Neill- Rosa's sexual harassment to Vice Mayor Lozada, who was serving as Acting Mayor since Mayor O'Neill-García was traveling. She made this decision with great fear because the [Municipality's human resources office]'s Acting Director at the time was Ramos. Indeed, it was Ramos who eventually received Plaintiff's July 29, 2015, EEOC Charge at the [Municipality's human resources office].

*Id*. at 22 (emphasis in original) (citations omitted).

Jelú's internal written complaint of July 13, 2015, was assigned for investigation to Romero. In this regard, Jelú asserts that the investigation was biased against her, inasmuch as "Romero simultaneously provided legal advice to the Municipality's human resources office on decisions regarding the terms and conditions of her employment, including Quintero's evaluation of her work performance." *Id.* at 30. Jelú further indicates that the Municipality's sexual harassment policy "affords the complainant the right to an administrative adjudicative hearing, [s]pecifically an informal procedure to be carried out by the [h]earing [e]xaminer in which the parties (Complainant and Defendant), as well as the corresponding witnesses, shall be heard in conformity with the due process of the law." *Id*. at 29. That, according to the Municipality, must entail "the opportunity to cross-examine the witnesses that testify against them." *Id*. at 29-30. However, according to Jelú, the investigation conducted by Romero did not comply with the aforementioned due-process standards insofar as it "consisted in [Romero] conducting *ex-parte* interviews of the parties and the witnesses and in examining documental evidence behind close[d] doors." *Id.* at 30.

In light of the above, genuine issues of fact preclude summary judgment as to the Municipality's liability for the alleged sexual harassment. Specifically, there are material facts in controversy as to whether the alleged acts by O'Neill-Rosa against Jelú in fact occurred. Furthermore, assuming that the alleged acts occurred, there are genuine issues of fact that warrant a jury trial regarding: (i) the extent of control the Municipality had over O'Neill-Rosa as a non-employee; (ii) whether, prior to the aforementioned written complaint by Jelú, the

Municipality obtained constructive knowledge of the alleged sexual harassment by O'Neill-Rosa; (iii) the adequacy of the Municipality's measures to prevent sexual harassment in the workplace in response to Jelú's written complaint; and (iv) the damages suffered by Jelú due to O'Neill-Rosa's acts for which the Municipality may be liable, if any. *See* 29 C.F.R. § 1604.11; *Medina-Rivera*, 713 F.3d at 137; *Plaza-Torres v. Rey*, 376 F. Supp. 2d 171, 183-183 (D.P.R. 2005). *Rodríguez Hernández v. Miranda-Vélez*, 132 F.3d 848, 853-854 (1st Cir. 1998).

### B. The Retaliation Claim

### 1. Applicable Law

Title VII prohibits retaliation against an employee for, among other grounds, having opposed any unlawful employment act or practice. 42 U.S.C.A § 2000e-3; *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 59 (2006). A claimant may establish an actionable claim of retaliation with either direct or circumstantial evidence. *DeCaire v. Mukasey*, 530 F.3d 1, 20 (1st Cir. 2008). Absent direct evidence to establish a prima facie case of retaliation, the plaintiff must show under the *McDonnell Douglas* burden shifting test that: (1) he/she engaged in protected conduct; (2) he/she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Freadman v. Metro Prop. & Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007). In turn, the defendant must articulate a legitimate, non-retaliatory reason for the adverse action, in which case, plaintiff must establish that the proffered reason was pretextual. *Id.*; *Collazo. v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010).

To be deemed adverse under applicable law, an employment action must substantially affect employment or alter the conditions of the workplace, typically involving discrete changes in the terms of employment such as hiring, firing, failing to promote, and/or lower salary or benefits. *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35-36 (1st Cir. 2010). In that respect, the First Circuit has held consistently that employment actions such as work schedule changes, lateral transfers, and negative performance evaluations do not necessarily constitute actionable adverse employment action unless these entail "a demotion in form or substance." *Marrero*, 304 F.3d at 23; *see also Shervin v. Partners Healthcare System, Inc.*, 804 F.3d 23 (1st Cir. 2015); *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94-95 (1st Cir. 2012); *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43 (1st Cir. 2011); *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir. 2011); *Morales-Vallellanes*, 605 F.3d at 35-36.

Furthermore, a hostile work environment may constitute an adverse employment action that gives rise to a cognizable claim of retaliation under Title VII, so long as the acts comprising the hostile work environment are severe and pervasive as to affect the terms and conditions of employment. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002); *Marrero*, 304 F.3d at 22-27. Additionally, a constructive discharge may give rise to an actionable claim of retaliation under Title VII, so long as an employer's actions and/or toleration of harassment make a claimant's working conditions so objectively intolerable as to compel that worker to resign. *See Landrau-Romero v. Banco-Popular de Puerto Rico,* 212 F.3d 607, 613 (1st Cir. 2000); *Hernández-Torres v. Intercontinental Trading,* 158 F.3d 43, 46-48 (1st Cir. 1998).

In proper circumstances, the required causal connection may be established by temporal proximity between the relevant events, but the proximity must be very close. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Moreover, "[t]o defeat summary judgment in a retaliation case, a plaintiff must point to some evidence of retaliation by a pertinent decisionmaker." *Sánchez-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012). In addition, "the employee must show that the retaliator knew about her protected activity." *Medina-Rivera*, 713 F.3d at 139.

**2.  Genuine Issues of Fact Preclude Summary Judgment as to Jelú's Retaliation Claim**

Jelú began her employment at the Municipality on July 17, 2012, as Attorney II in the Legal Division. **ECF No. 213** at 5. In 2014, a vacancy for the position of Attorney III in the same division became available. Jelú applied for and was offered the position, and occupied the same in December 2014. *Id*. at 7. Her appointment as Attorney III was subject to a one-year probationary period. **ECF Nos. 153** at 6; **197** at 31. In May 2015, Jelú received her first written performance evaluations in that position, executed by Rodríguez, her supervisor at that time. **ECF No. 153** at 6. Rodríguez provided Jelú with monthly evaluations spanning from December 2014 to May 2015, wherein she rated Jelú's performance as satisfactory or above in all areas. *Id.;* **ECF No. 197** at 33-34. Nonetheless, according to the Municipality, Jelú's performance had been found lacking by Legal Division supervisors prior to July 2015, but those alleged deficiencies were not documented in writing. **ECF Nos. 153** at 6; **197** at 32-33.

In June 2015, Ana Quintero became the director of the Municipality's Legal Division and, as such, Jelu's supervisor. **ECF Nos. 153** at 6-7; **197** at 33-34. According to the Municipality, Quintero found Jelú's performance to be deficient, for which on July 10, 2015, Quintero gave Jelú a written evaluation pointing out deficiencies and providing an action plan. **ECF No. 153** at 6-7. The Municipality further asserts that Jelú did not agree with that evaluation, and requested time to comment on it, which Quintero granted. *Id*. Additionally, the Municipality alleges that when, on July 13, 2015, Quintero followed up with Jelú regarding the evaluation, "plaintiff indicated that she no longer had the evaluation, and suggested the office administrator, Ms. Lillian Nater could have taken it. Despite Ms. Quintero following up via email, the evaluation was never found." *Id*. On that same date, Jelú submitted to the Municipality's Vice-Mayor, Aurialis Lozada, her first written internal complaint of sexual harassment as to O'Neill-Rosa's alleged acts. **ECF No. 197** at 45.

According to the Municipality, once Jelú indicated that she did not have the July 10, 2015 evaluation, Quintero redid the performance evaluation and gave it to Jelú at a meeting held on July 14, 2015, where they discussed areas of deficiency and a performance improvement plan. **ECF No. 153** at 8. The Municipality further proffers that, "Ms. Lozada informed Ms. Quintero that [p]laintiff had filed a complaint of sexual harassment. Ms. Quintero had no [prior] knowledge of plaintiff's complaint. Plaintiff did not complain to Ms. Ana Quintero of the alleged sexual harassment." *Id.* (citations omitted).

The Municipality further alleges that Jelú's performance did not improve after July 2015, and that on December 15, 2015, Quintero met with Jelú to discuss several monthly evaluations that reflected this. **ECF No. 156** at 15. Jelú objected to and refused to sign said evaluations, and, on that date, Quintero informed the Municipality's Human Resources department "that she did not recommend [p]lainitff for the regular post of Attorney III." *Id.* at 12-13. Moreover, according to the Municipality, "[s]ince [p]laintiff's probationary period was due to end on that date, and there was some disagreement [among municipal management] as to whether to accept Ms. Quintero's recommendation, it was agreed to extend [p]laintiff's probationary period until a final decision was reached." *Id.* at p. 13. Additionally, the Municipality submitted plaintiff's objections to the performance evaluations to a committee for reconsideration. *Id.* Plaintiff objected to said referral, and according to the Municipality, "she was summoned to an informal hearing before the [reconsideration] Committee, where she would be given the opportunity to be heard regarding her objections to the evaluations performed by Ms. Quintero." *Id.* The Municipality asserts that "since [p]laintiff did not appear before the Committee to be heard, a decision was made in her absence to disregard the six (6) evaluations performed by Ms. Quintero, and instead extend her probationary period by six (6) months." *Id.* According to the Municipality, probationary periods had been extended as to other employees in the past. *Id.*

Jelú presented her resignation letter on March 28, 2016. **ECF Nos. 156** at 16-17; **197** at 66. In that letter, Jelú stated as follows:

The sexual harassment which I was submitted to by the Mayor's son with the knowledge of the Municipality, and the multiple reprisals that I have been victim of for having complained about such sexual harassment, have rendered me temporarily dysfunctional, forcing me to leave my job under leave for psychiatric illness, which the Municipality still insists on questioning. I believe that my working conditions in the Municipality will not improve if I go back to work, but that I can only anticipate more of the same intolerable conduct: harassment and reprisals. This conduct of the Municipality forces me to resign from my job, as hereby notified and effective as of today, in order to avoid an even greater deterioration to my mental health.

**ECF No. 156-31** at 4. The Municipality avers that "[f]ormer Mayor Héctor O'Neill-García did not accept [p]laintiff's resignation letter, because accepting it would have been tantamount to admitting her allegations." **ECF No. 156** at 17. Plaintiff never returned to her job thereafter, but according to the Municipality, "[p]laintiff was not terminated for job abandonment, and continued to have access to benefits, such as medical insurance, until December 31, 2016, at which time she was informed that she had been removed from the Municipality's payroll." *Id*.

In sum, the Municipality contends that the case's record warrants summary judgment under Rule 56 as to Jelú's retaliation claim. The Municipality concedes that she engaged in protected conduct by filing an internal written complaint of sexual harassment and a subsequent related EEOC charge. Nonetheless, the Municipality asserts that she never put it on notice prior to said written complaint, and that the measures it took upon the filing of said complaint effectively stopped the alleged acts of harassment. The Municipality also avers that it did no subject plaintiff to any adverse employment action. On the contrary, according to the Municipality, all of its employment actions regarding Jelú were fair, objective, and non-

discriminatory. Those resulted in Jelú's retention in the position of Attorney III, albeit on an extended probationary status, notwithstanding her allegedly well-documented performance deficiencies preceding the Municpality's knowledge of the alleged sexual harassment. The Municipality further contends that "[p]laintiff offers no evidence in support of her theory that the adverse actions alleged in the [judicial] [c]omplaint were improperly motivated by her complaints of sexual harassment." **ECF No. 153** at 38.

Jelú vehemently opposes the Municipality's version of the facts. **ECF No. 200** at 19-47. As summarized above, Jelú asserts that long before the filing of her written internal complaint of sexual harassment on July 13, 2015, she had verbally complained of O'Neill-Rosa's alleged unwanted sexual advances to three municipal managers, including to Quintero. *Id*. at 19-25. As such, she contends that the Municipality had constructive knowledge of O'Neill-Rosa's alleged sexual harassment against Jelú by the time she filed her written internal complaint of sexual harassment on July 13, 2015. *Id*. at 19-25, 43-47. Furthermore, "[p]laintiff testified [in her deposition] that the meeting that Quintero alleges took place on July 10, 2015, to discuss her work performance never occurred," that Quintero never gave her the alleged written evaluation of July 10, 2015, and that she was lying about it. *Id*. at 27. Jelú sustains that her work performance was excellent, and that she objected emphatically to Quintero's negative performance evaluations. **ECF Nos. 197** at 33-34, 59-66; **200** at 24-29. She sustains that prior to her filing of an internal complaint of sexual harassment on July 13, 2015, she had never received deficient performance evaluations. She alleges that "no such issues regarding her work performance . . .

are documented in the Municipality's business records produced to [p]laintiff in discovery, including her [p]ersonnel [f]ile." **ECF No. 200** at 28. Jelú further asserts that, on the contrary, she received positive written performance evaluations during her time as Attorney III and prior to the filing of her written internal complaint. *Id.*

Moreover, Jelú asserts that Quintero's negative performance evaluations—the July 2015 evaluation and the six monthly evaluations that Quintero gave her in December 2015—were unfair and retaliatory, motivated by her filing of the internal complaint and subsequent EEOC charge. *Id.* at 25-29, 47-59. And "upon Jelu's questioning on the irregular manner in which the evaluation process had been conducted, Quintero told Jelú that she had forfeited the right to be evaluated monthly and to know the content of each evaluation month by month by complaining of sexual harassment against the Mayor's son." **ECF No. 197** at 115.

Additionally, Jelú avers that, as a result of her internal written complaint of July 13, 2015, and subsequent EEOC charge, she was subject to a retaliatory hostile work environment. **ECF No. 200** at 3, 47-60. Specifically,

> Jelú's retaliation claim rests upon the Municipality's toleration of the ongoing sexual harassment of O'Neill-Rosa and the hostile work environment to which she was subjected by her supervisor and other municipal employees for having complained of such misconduct; the excessive supervision and harsh criticism, the exclusion [from] departmental meetings; the marginalization; the elimination of some of her duties; the mishandling of the investigation into her internal grievance and EEOC Charge, including unlawful disclosure of confidential and protected information to a third-party; the unwarranted negative job evaluations and recommendation to fire her; and the decision to extend her probationary period beyond the term prescribed by law and regulations; unwarranted work criticisms; belittlement; threats and intimidation by her supervisor; bullying or mobbing by

secretaries and another attorney; exclusion form departmental meetings; and marginalization.

*Id.* at 48-49. Jelú deems as a sham the reasons given by the Municipality when, in December 2015, it denied her appointment to the Attorney III position as a regular employee and instead extended her probationary period. *Id.* at 47-60. As summarized above, she asserts that said employment decision is based on biased, negative performance evaluations issued by Quintero in retaliation for plaintiff's complaints and EEOC charge of sexual harassment as to O'Neill-Rosa's alleged acts. Additionally, plaintiff proffers that the probation extension in question violated the Municipality's policies that establish a twelve-month limit to a probationary period, even though the Municipality holds that it has executed such extensions to other employees. **ECF Nos. 197** at 63-66; **200** at 52. Finally, while the Municipality sustains that Jelú resigned voluntarily, Jelú asserts that she was subject to a constructive discharge due to the retaliatory hostile work environment. **ECF Nos. 153** at 32-33; **156** at 16; **200** at 3, 46-47, 54-56.

In sum, genuine issues of material facts preclude summary judgment pursuant to Rule 56 in relation to the Municipality in the instant case. *See Anderson*, 477 U.S. at 255. Specifically, the following issues warrant credibility determinations, weighing of the evidence, and drawing of inferences by a jury at trial:

(i)     Whether the alleged acts by O'Neill-Rosa took place; and if so,

(ii)    whether they amounted to sexual harassment in the workplace against Jelú in the modality of hostile work environment.

(iii)    Whether the Municipality knew or should have known of the alleged acts.

(iv)    The Municipality's degree of control and any other legal responsibility which it may have had with respect to O'Neill-Rosa, if any;

(v)    whether the Municipality obtained constructive knowledge of Jelú's allegations of sexual harassment (by Jelú) prior to the filing of the internal written complaint of July 13, 2015.

(vi)    The adequacy of the Municipality's handling of Jelú's complaints regarding O'Neill-Rosa's alleged acts, including Romero's investigation and report.

(vii)    The factual controversies regarding Jelú's performance in the Attorney III position, the related evaluations and employment actions regarding the probationary period;

(viii)    whether the Municipality engaged in adverse employment actions against Jelú due to her filing of an internal written complaint and subsequent EEOC charge.

(ix)    Whether Jelú voluntarily resigned from her position as Attorney III in the Municipality or was constructively discharged; and

(x)    the extent of the damages suffered by Jelú for which the Municipality may be liable, if any.

**IV.    CONCLUSION**

In light of the above, the Municipality's motion for summary judgment under Rule 56,

**ECF No. 153**, is hereby **DENIED**.

   **SO ORDERED**.

At San Juan, Puerto Rico, on this 15th day of October, 2018.

                              **S/AIDA M. DELGADO-COLÓN**
                              **United States District Judge**