**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

INÉS MARÍA JELÚ IRAVEDRA,

    **Plaintiff,**

       v.

MUNICIPALITY OF GUAYNABO, *et
al.*,

    **Defendants.**

**CIVIL NO.** 16-1585(RAM)

---

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Plaintiff's *Motion in Limine to Exclude the Report and Proffered Testimony Of Dr. Cynthia Casanova Pelosi.* (Docket No. 252). After reviewing said motion, the Municipality of Guaynabo's opposition at Docket No. 264, and the applicable law, the Court hereby **GRANTS** Plaintiff's motion to exclude the proffered expert testimony of Dr. Cynthia Casanova Pelosi. Simply put, the report does not meet the requirements of Fed. R. Evid. 702. Moreover, the report invades the province of the Court by delving into legal standards and it invades the province of the jury by opining as to Plaintiff's credibility.

### I. BACKGROUND

On March 31, 2016, Inés María Jelú-Iravedra ("Jelú" or "Plaintiff") filed a *Complaint* against her former employer, the Municipality of Guaynabo ("the Municipality" or "Defendant") for

alleged sex-based discrimination, sexual harassment in the form of hostile work environment, retaliation, and vicarious tort liability. (Docket No. 1). Plaintiff also presented a claim for damages against the alleged harasser, co-defendant Héctor O'Neill-Rosa ("O'Neill-Rosa"). Id. The *Complaint* includes multiple causes of action, including a request for compensation of the mental damages allegedly caused by both Defendants. (Docket No. 1 at 32-33).

In the *Joint Proposed Pre-Trial Conference Memorandum* filed on April 22, 2019, the Municipality lists psychiatrist Dr. Cynthia Casanova-Pelosi ("Dr. Casanova") as its expert witness. (Docket No. 251 at 86). Specifically, they indicate that Dr. Casanova's testimony shall consist of "an opinion regarding her psychiatric evaluation of plaintiff, which includes, among other matters, plaintiff's psychosocial history, mental status exam, diagnostic impression, and psychiatric opinion in relation to the issue of plaintiff's claim for emotional damages." Id.

That same day, Plaintiff filed multiple motions *in limine*, including a *Motion in Limine to Exclude the Report and Proffered Testimony of Dr. Cynthia Casanova Pelosi* ("*Motion in Limine*"). (Docket No. 252). Plaintiff's *Motion in Limine* offered four (4) reasons as to why Dr. Casanova's report and testimony should be stricken from the record: (1) Dr. Casanova's selective summary of the facts is not specialized knowledge; (2) the report includes

legal conclusions beyond her field of expertise; (3) she does not provide the methodology used to reach her diagnosis nor does she identify the origin of Plaintiff's symptoms; and (4) Dr. Casanova's conclusions regarding Plaintiff's credibility are inadmissible. (Docket No. 252 at 3-11).

On May 20, 2019, the Municipality filed its *Omnibus Response in Opposition to Plaintiff's Motions in Limine at Docket Nos. 252–256*. (Docket No. 264). In their *Response*, Defendant posits that although the summary of the facts provided by Dr. Casanova in her report is not scientific knowledge, it is still necessary for her diagnosis to comply with Fed. R. Evid. 702(b). (Docket No. 264 at 4-5). While the Municipality concedes that the expert report includes legal standards, it insists that they only provide "context" and were not the basis for the diagnosis. (Docket No. 264 at 7-8). In the alternative, Defendant argues that the portion of the report that includes cases and legal standards could be addressed with a limiting instruction to the jury. (Docket No. 264 at 8). The Municipality denies Plaintiff's allegation that Dr. Casanova did not indicate the methodology used to reach her diagnosis and cites the portion of the report in which the psychiatrist indicates that she interviewed Plaintiff for four hours and reviewed eighteen other sources. (Docket Nos. 264 at 5 and 252-2 at 2). Furthermore, Defendant contends that Dr. Casanova did not have the obligation to identify the source of Plaintiff's

symptoms. (Docket No. 264 at 7). Lastly, although the Municipality
concedes that generally, an expert's opinion regarding a
witness's' truthfulness is inadmissible pursuant to Fed. R. Evid.
702, it maintains that expert testimony may be admitted to
establish a witness's character for truthfulness. (Docket No. 264
at 9).

## II. STANDARD

### A. Expert Witness Testimony in General

Federal Rule of Evidence 702 governs the admissibility of
expert witness testimony. Pursuant to this rule, trial judges are
tasked with "ensuring that an expert's testimony both rests on
**reliable foundation and is relevant to the task at hand.**" Daubert
v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993) (emphasis
added). Specifically, Fed. R. Evid. 702 establishes that:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an
> opinion or otherwise if:
> (a) the expert's scientific, technical, or
> other specialized knowledge will help the
> trier of fact to understand the evidence or to
> determine a fact in issue;
> (b) the testimony is based on sufficient facts
> or data;
> (c) the testimony is the product of reliable
> principles and methods; and
> (d) the expert has reliably applied the
> principles and methods to the facts of the
> case.

Therefore, under Fed. R. Evid. 702(a), expert testimony is
relevant and admissible if it consists of specialized knowledge

that will assist the trier of fact. To determine if proffered testimony will assist the trier of fact, courts must determine "whether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved." United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995) (quoting United States v. Montas*,* 41 F.3d 775, 783 (1st Cir. 1994).

When assessing the foundation of proffered specialized knowledge, judges must assume the "role of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies." González-Pérez v. Gómez-Águila, 296 F.Supp.2d 110, 113 (D.P.R. 2003) (citing Daubert, 509 U.S. at 597 (1993)). The Supreme Court has established four (4) factors to assist trial courts when assessing the reliability of expert testimony and its underlying methodology: (1) whether the expert's theory or technique is generally accepted as reliable in the scientific community; (2) whether the theory or technique in question can be, and has been, tested; (3) whether the theory or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the theory or technique. Daubert, 509 U.S. at 588-594.

When applying these factors and performing their gatekeeping function, judges must focus "**solely on principles and methodology,**

**not on the conclusions that they generate**." Id. at 595. However, given that conclusions and methodology are not entirely distinct from one another, judges "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Accordingly, expert testimony is inadmissible if it merely states an expert's qualifications, their conclusions, and their assurances of reliability. *See* Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995).

What constitutes as reliable methodology under Fed. R. Evid. 702 and Daubert varies depending on the nature of the proffered expert testimony and their specialized knowledge. With regards to psychologist and psychiatrist expert testimony, courts routinely accept the following methodologies under Daubert: medical history and/or record review, personal interviews, patient observation, physical examination, administration of standard psychological tests, clinical rating scales and background facts. *See* Qube Films Ltd. v. Padell, 2016 WL 888791, at *2 n. 1 (S.D.N.Y. Mar. 1, 2016) (citing United States v. Finley, 301 F.3d 1000, 1008-09 (9th Cir. 2000)); Israel v. Spring Indus., Inc., 2006 WL 3196956, at *10 (E.D.N.Y. Nov. 3, 2006).

To ensure reliability and intellectual rigor, all experts are required to "produce a written report or testimony supported by an accepted methodology that is based on substantial scientific,

technical, or other specialized knowledge." <u>Figueroa v. Simplicity</u> <u>Plan de Puerto Rico</u>, 267 F. Supp. 2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." <u>Id.</u> (citing Justo Arenas & Carol M. Romey, <u>Professional</u> <u>Judgement Standard and Losing Games for Psychology, Experts and</u> <u>the Courts</u>, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

These reports must also comply with Federal Rule of Civil Procedure 26(a)(2)(B) to be admissible. Fed. R. Civ. P. 26(a)(2)(B) requires that expert reports contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

## III. DISCUSSION

### A. An Expert's Summary of the Facts

In her *Motion In Limine*, Plaintiff seeks to strike the portions of Dr. Casanova's report dedicated to "selectively"

summarizing the facts because (1) they do not consist of specialized knowledge and (2) said facts will be made available to the jury regardless of the expert testimony. (Docket No. 252 at 3). In response, the Municipality asserts that Dr. Casanova needed to incorporate "sufficient facts" in her report to comply with Fed. R. Evid. 702(b), regardless of whether they would later be made available to the jury. (Docket No. 264 at 5).

When an expert simply acts "as a narrator of the facts," they are not utilizing reliable methodology nor conveying opinions based on their knowledge or expertise. Tchatat v. City of New York, 315 F.R.D. 441, 445 (S.D.N.Y. 2016) (quoting Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie, 2015 WL 5459662, at *3 (S.D.N.Y. 2015)). **Thus, the mere narration on its own fails to comply with Daubert and would not be inadmissible.** Id. at 444.

Furthermore, under Fed. R. Evid. 403, a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of […] needlessly presenting cumulative evidence." An **unaccompanied** summary of the facts based on witness testimony and the contents of documentary evidence qualifies as "needlessly cumulative" evidence. Therefore, the admissibility of Dr. Casanova's summary of the facts at Docket No. 252 at 3-6 depends on the admissibility of the rest of Dr. Casanova's testimony.

## B. Legal References

A significant portion of Section VII of Dr. Casanova's report, titled "Psychiatric Opinion related to the Issue of Emotional Damages," is dedicated to discussing legal standards and caselaw regarding how to prove a sexual harassment case. (Docket No. 252-2 at 12-13).[1] Plaintiff correctly asserted that Dr. Casanova's summary of the applicable law is inadmissible given that this "Court may not accept expert testimony as to the proper application of laws of the U.S. or Puerto Rico." Molinelli-Freytes v. Univ. of Puerto Rico, 792 F. Supp. 2d 150, 156 (D.P.R. 2010).

The Municipality does not argue that said legal standards are admissible. On the contrary, the Municipality affirms that "Dr. Casanova's medical diagnosis of Jelú and her expert opinion would not change at all if the[se] objected portions are eliminated from the report." Given that the legal standards were not the basis for Dr. Casanova's diagnosis, the Municipality argues that their inclusion should not result in the inadmissibility of the entire report. Be that as it may, the report must be stricken in its entirety for other reasons discussed below.

## C. A Reliable Diagnosis

In sexual harassment cases such as this one, courts routinely allow both treating and non-treating psychologists and

---

[1] Without considering the pages that contain the expert's Curriculum Vitae, a review of the report demonstrates that the Dr. Casanova dedicated roughly ten percent (10%) of the report to summarizing legal standards.

psychiatrists to testify as to whether the plaintiff experienced emotional distress, or other medical conditions, caused by sexual harassment. Bachiocchi v. S. New England Tel. Co., 2008 WL 11375363, at 7 (D. Conn. 2008); see e.g. Karcher v. Emerson Elec. Co., 94 F.3d 502, 509 (8th Cir. 1996) cert. denied, 117 S. Ct. 1692 (1997) (admitting testimony from plaintiff's treating psychiatrist tying her depression and emotional stress to her job-related problems); Phillips v. Smalley Maint. Servs., Inc., 711 F.2d 1524, 1528 (11th Cir. 1983) (medical experts' testimony that plaintiff's anxiety was related to the events surrounding her termination, and not caused by her physical problems, was admissible); O'Rourke v. City of Providence, 235 F.3d 713, 733-34 (1st Cir. 2001) (finding that treating-psychiatrist's testimony that plaintiff "was clearly depressed" because of harassment and suffered from post-traumatic stress disorder supported the jury award); Webb v. Hyman, 861 F.Supp. 1094, 1114 (D.D.C. 1994) (psychologist testified that harassment caused plaintiff's mental harm by bringing out deeply repressed emotions relating to her childhood abuse).

However, prior to being admissible, said expert testimony must still comply with Fed. R. Evid. 702 and Daubert's prerequisites for reliability and methodology. Although the subject of expert testimony need not be known to a certainty in order to be reliable, it must contain **"more than subjective belief**

**or unsupported speculation**." <u>Daubert</u>, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). Moreover, Fed. R. Evid. 702(d) explicitly requires that experts "reliably appl[y] the principles and methods to the facts of the case."

In <u>Figueroa v. Simplicity Plan de Puerto Rico</u>, another judge in this District determined that conclusory expert testimony that **simply contradicts** plaintiff's damages claims was inadmissible. 267 F. Supp. 2d 161 (D.P.R. 2003). The defendant's psychiatric expert in <u>Figueroa</u> contested a plaintiff's claim that their personality changed due to defendant's negligence. <u>Id.</u> at 165. Specifically, the psychiatric report stated that "many things must happen" for a personality to change and that the defendant's actions could not have modified or changed plaintiff's personality. <u>Id.</u> The Court found that the expert's analysis was conclusory because it did not explain what "triggers supposedly cause the personality of an individual to change," was not supported by any comprehensive scientific knowledge, and did not display the method used to reach his conclusion. <u>Id.</u>

Similarly, in the present case, Jelú takes issue with Dr. Casanova's diagnosis that her depression was not caused by sexual harassment. Specifically, Plaintiff alleges that this diagnosis is improper under Fed. R. Evid. 702 because Dr. Casanova did not reveal the methodology she used and failed to identify an

alternative origin for Plaintiff's symptoms. (Docket No. 252 at 8-9).

On the other hand, the Municipality affirms that Dr. Casanova clearly stated that her methodology consisted of interviewing Plaintiff on two (2) occasions for a total of four (4) hours and reviewed eighteen (18) sources, including Plaintiff's medical records and psychiatric reports. (Docket Nos. 264 at 5-6; 252-2 at 2). Furthermore, the Municipality contends, *without citing any case law*, that Dr. Casanova did not need to determine the root cause of Plaintiff's emotional distress to conclude that sexual harassment was not its cause. (Docket No. 264 at 7).

The diagnosis in controversy consists of merely one short sentence. Namely, Dr. Casanova diagnosed Jelú with "[a]djustment disorder with mixed anxiety and depression **due to other employment and/or personal stresses which began around December 2014 not related to sexual harassment**." (Docket No. 252-2 at 12) (emphasis added). The Court recognizes that Dr. Casanova precedes said diagnosis with Jelú's "psychosocial history," which summarizes the information Dr. Casanova gathered regarding Jelú's family, academic, marital, employment, medical and psychiatric history. (Docket No. 252-2 at 6-12). Furthermore, although it is not explicitly explained in the report, the Court is willing to assume that Dr. Casanova obtained the information for the psychosocial history through appropriate psychology methodology referenced

earlier in the report, such as interviewing Plaintiff and reviewing her medical history. *See* <u>Israel</u>, 2006 WL 3196956, at *10 (holding that case law suggests that using personal interviews, a medical record review, clinical rating scales, and background facts of past symptoms, behaviors, and experiences are appropriate methodologies to form a reliable psychiatric opinion).

**However, at no point does Dr. Casanova explain what elements of Plaintiff's psychosocial history allowed her to reach the conclusion that (1) Plaintiff is depressed and (2) that it was not caused by sexual harassment.** Specifically, while the report mentions that Plaintiff has been treated for depression in the past and reports still feeling depressed and anxious, it fails to indicate any of Plaintiff's specific symptoms or **why** Dr. Casanova **herself** believes that Plaintiff is anxious and depressed. (Docket No. 252-2 at 11-12).

When a plaintiff seeks to prove specific medical causation, their expert "must at least address obvious alternative causes and **provide a reasonable explanation for dismissing specific alternate factors identified by the defendant**" in order to comply with <u>Daubert</u>. <u>Israel</u>, 2006 WL 3196956, at *5 (emphasis added). Likewise, although defendants do not need to "**disprove causation**" asserted by a plaintiff, they must still "**produce credible evidence** which tends to discredit or rebut the plaintiff's evidence." <u>Wilder v. Eberhart</u>, 977 F.2d 673, 676 (1st Cir. 1992) (emphasis added).

Therefore, conclusory statements merely contradicting a plaintiff's evidence do not suffice to meet even this lenient standard. Although Dr. Casanova did not have to pinpoint what else besides sexual harassment was causing Jelú's anxiety and depression, it is telling that she failed to mention or explain the "other employment and/or personal stresses" which she claims are responsible for Plaintiff's symptoms. (Docket No. 252-2 at 12). In other words, Dr. Casanova did not provide a "reasonable explanation" as to why sexual harassment is not a factor, let alone the cause, of Jelú's depression and anxiety. Moreover, stating that these "stresses" began in December 2014 does not qualify as providing sufficient details to make the diagnosis any less speculative. *See* Happel v. Walmart Stores, Inc., 602 F.3d 820, 826 (7th Cir. 2010) (finding that a physician's past experience and a discussion of temporal proximity, in the absence of supporting medical literature, "does not an expert opinion make").

Additionally, Dr. Casanova's proffered expert testimony does not provide any references to medical literature, psychiatric authorities or other sources in support of its findings. (Docket No. 252-2 at 2). *See* Marugame v. Johnson, 2014 WL 12591922, at *3 (D. Haw. 2014) (striking an expert psychiatrist's testimony for failing to "identify any of the psychiatric authorities or sources that he compared this information to in order to form his opinions."). This Court has previously held that expert witness

reports that only offer conclusory opinions without providing principles, methods, medical literature or other sources to analyze are **inadmissible**. <u>Martinez v. United States</u>, 2019 WL 3022497, at *5 (D.P.R. 2019), reconsideration denied.

### D. **Expert Testimony Regarding Witness Credibility**

Determining the credibility of a witness is a function reserved exclusively for the jury. *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>United States v. Gonzalez-Maldonado</u>, 115 F.3d 9, 15 (1st Cir. 1997) ("The competency of a witness to testify is a determination to be made by the trial judge, but issues of credibility are for the trier of fact."). Therefore, "witnesses may not opine as to the credibility of the testimony of other witnesses at the trial." <u>United States v. Scop</u>, 846 F.2d 135, 142 (2d Cir.), <u>on reh'g,</u> 856 F.2d 5 (2d Cir. 1988).

Accordingly, "an expert's opinion that another witness is lying or telling the truth is **ordinarily inadmissible** pursuant to Rule 702 because the opinion **exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion**." <u>Shay</u>, 57 F.3d 126, 131 (1st Cir. 1995) (emphasis added). Other Circuit Courts have similarly held that "expert testimony which does nothing but vouch for the credibility of another witness" is inadmissible because it "encroaches upon the jury's vital and

exclusive function to make credibility determinations, and therefore **does not 'assist the trier of fact.'**" United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999) (emphasis added). This limit applies to all witnesses, regardless of their expertise. Therefore, regardless of whether an expert possess "medical knowledge and skills that relate directly to credibility," they are barred from opining as to whether a witness is being truthful. United States v. Scop, 846 F.2d 135, 142 (2d Cir.), on reh'g, 856 F.2d 5 (2d Cir. 1988) (citing United States v. Azure, 801 F.2d 336, 340-41 (8th Cir. 1986)).

This prohibition is particularly important in cases where the witness in question is both a party **and** an alleged victim. *See* Hoult v. Hoult, 57 F.3d 1, 7 (1st Cir. 1995). **The First Circuit has found that when an expert "testifies with respect to the credibility of a victim/witness there is a real danger that jurors will lend too much credence to the expert's evaluation of the victim's credibility, at the expense of their own independent judgment of credibility**." Id. s*ee also* United States v. Fosher, 590 F.2d 381, 383 (1st Cir. 1979) (finding that "proffered expert testimony [c]ould create a substantial danger of undue prejudice and confusion because of its aura of special reliability and trustworthiness.")

Despite the above, experts are not barred from discussing credibility in absolute terms. Generally, under the Federal Rules

of Evidence, "expert testimony may be admitted to establish a witness's **character** for truthfulness" in appropriate circumstances. Shay, 57 F.3d at 131. Specifically, Fed. R. Evid. 608(a) allows a witness's credibility to "be attacked or supported by testimony about [their] reputation for having a character for truthfulness or untruthfulness." This is particularly pertinent in cases involves testimony from expert psychologists or psychiatrists.

For example, in Shay, the First Circuit found that the District Court erred by excluding expert psychiatric testimony stating that the defendant suffered from a mental disorder that caused him to make false, grandiose statements, even against his own self-interest. Shay, 57 F.3d at 133. Other Circuit Courts have held that in sexual abuse cases, experts "can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits." United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993) (citing United States v. St. Pierre, 812 F.2d 417, 419–20 (8th Cir.1987)). Likewise, an expert can indicate whether a victim's symptoms, behavior, and/or psychological test results are consistent with what is commonly found in sexual abuse cases. See Parker v. Scott, 394 F.3d 1302, 1312 (10th Cir. 2005); Hellums v. Williams, 16 F. App'x 905, 911 (10th Cir. 2001).

On the other hand, the Tenth Circuit has held that an expert testifying that they "found no reason to question the victim's allegations" was inadmissible and "plainly invaded the jury's province to determine whether the victim was credible." Hellums, 16 F. App'x at 911. In Nichols v. Am. Nat. Ins. Co., a sexual harassment case under Title VII, the Eighth Circuit found that the expert went beyond their diagnostic opinion by testifying that the plaintiff had "poor psychiatric credibility," "poor ability to report her psychological symptoms accurately" and that her statements were affected by secondary (i.e. financial) gain and malingering. Nichols v. Am. Nat. Ins. Co., 154 F.3d 875, 882 (8th Cir. 1998). Furthermore, the Nichols Court found that the expert's testimony that Plaintiff's claims needed to be weighed or else "you can get a very skewed and inaccurate view of what actually happened" created a "serious danger of confusing or misleading the jury." Id. at 882-883.

In her *Motion In Limine*, Plaintiff highlights five (5) instances in which she believes that Dr. Casanova's expert report included inadmissible opinions regarding her credibility. (Docket No. 252 at 9-10). In their *Opposition*, the Municipality concurs with Jelú that expert testimony regarding whether a witness is lying is generally inadmissible. (Docket No. 264 at 9). However, the Municipality contends that in those instances, Dr. Casanova's expert testimony merely discusses Plaintiffs *character for*

*truthfulness* as permitted by the Federal Rules of Evidence. <u>Id.</u>
Specifically, the Municipality posits that "[a]lthough Dr.
Casanova cannot testify that Jelú is lying, she may discuss her
personal observations during Jelú's interview and all other
information used to support her diagnosis that […] sexual
harassment is not the cause of her emotional state" without
"interfer[ing] with the jury's role of judging Jelú's
credibility." <u>Id.</u>

However, the text of Dr. Casanova's report **directly
contradicts this argument.** In her report, Dr. Casanova states:

> It is my opinion, with **reasonable degree of medical
> certainty,** that Ms. Ines Jelu Iravedra's claimed
> psychological damages is [sic] not documented prior to
> December 2014 as evidenced by the medical records
> provided and the [sic] she only began psychiatric
> treatment after she made her formal complaint in July
> 2015, reason for which **her claims of harassment in 2012-
> 2014 are highly suspicious.** […] It is also **highly suspect**
> that despite her claimed overt rejections to Mr.
> O'Neill's Rosa [sic] advances, she never lost her job
> and in fact was questionably promoted to Attorney III
> when other seemed more qualified. […] **It is my opinion
> that her motivations to make a formal complaint of sexual
> harassment in this case had more to do with her deficient
> evaluations as Attorney III** and/or other employment or
> personal stresses she began to encounter in December
> 2014 **than any of her claims of sexual harassment.** (Docket
> No. 252-2 at 14).[2]

By asserting that Plaintiff's "**<u>claims</u>** of harassment in 2012-
2014 **<u>are highly suspicious</u>,**" that it is "highly suspect" Jelú was

---

[2] This excerpt of Dr. Casanova's report contains three of the five instances
that Plaintiff cites in her *Motion In Limine* as inadmissible opinions regarding
her credibility. (Docket No. 252 at 10).

promoted instead of losing her job, and that Plaintiff's "motivations […] had more to do with her deficient evaluations […] than any of her claims of sexual harassment," Dr. Casanova goes beyond the scope of her expertise to directly and explicitly cast aspersion on Jelú's claims. By using these phrases, Dr. Casanova interferes with the jury's exclusive function to determine Plaintiff's credibility. Moreover, these statements simply cannot be construed as an analysis of Plaintiff's character. Dr. Casanova does not conclude that Plaintiff's symptoms or behavior are inconsistent with what is commonly found in sexual harassment cases nor does she diagnose Plaintiff with a condition that would affect her ability to state the truth. *See* Shay, 57 F.3d at 133; Parker, 394 F.3d at 1312. Instead, the language in Dr. Casanova's report resembles the expert testimony found inadmissible by the Eight Circuit in Nichols. *See* Nichols, 154 F.3d at 882-83. Namely, Dr. Casanova contends, without providing any reasoning or methodology, that Jelú's sexual harassment claims were motivated by her negative performance evaluations, much like the expert in Nichols who found that a plaintiff's statements were affected by secondary gain. Id. Likewise, Dr. Casanova's assertion that Jelú's allegations are "highly suspicious" and "highly suspect" are analogous to the Nichols expert testimony claiming that the plaintiff provided a "skewed and inaccurate view of what actually happened." Id. Given that Dr. Casanova did not provide any specialized knowledge as to

Plaintiff's character for truthfulness, it is also worth noting that she would not be qualified to offer personal, opinion testimony as to Jelú's reputation for truthfulness. *See* United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990) (holding that a witness testifying regarding another's character for truthfulness must establish an appropriate foundation for their opinion by showing "such acquaintance with the [person under attack], the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded").

Beyond being an inadmissible assessment of Jelú's credibility, Dr. Casanova's conclusions are not founded on adequate methodology and would be unhelpful to the jury in this case. Dr. Casanova does not reference any psychological literature, experience or even details from her interview with Jelú to back her finding that Plaintiff's claims that she was sexually harassed at work during the years 2012-2014 are "highly suspicious." (Docket No. 252-2 at 14). On the contrary, the sole reasoning Dr. Casanova offers to support this conclusion is that Jelú "only began psychiatric treatment after she made her formal complaint in July 2015." Id. Said reasoning is void of any specialized or scientific knowledge. Furthermore, a jury does not need a psychiatrist's expert testimony to assemble and analyze a timeline of the events.

Finally, it is notable that Dr. Casanova prefaces her conclusion that Plaintiff's claims are suspicious and motivated by deficient performance evaluations by stating that they were achieved "**with a reasonable degree of medical certainty.**" (Docket No. 252-2 at 14). This language underscores the danger of undue prejudice that can be caused by jurors relying on an expert's evaluation of a witness's credibility instead of forming their own independent judgment. *See* Hoult v. Hoult, 57 F.3d 1, 7 (1st Cir. 1995).

Therefore, the previously cited sections of Dr. Casanova's testimony at Docket No. 252-2 at 14 are stricken for including inadmissible determinations regarding Jelú's credibility.

## IV. CONCLUSION

"When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." United States v. Duncan*,* 42 F.3d 97, 101 (2d Cir.1994). Thus, "[w]hen this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination." Id., *see also* Carballo Rodriguez v. Clark Equip. Co., 147 F. Supp. 2d 81, 85 (D.P.R. 2001). In light of the above, the entirety of the report must be stricken for failing to comply with Fed. R. Evid. 702 and for invading the province of the Court and the jury.

Dr. Casanova's diagnosis that Jelú's anxiety and depression was caused by essentially any work-related problem **other** than sexual harassment lacked common sense explanations, let alone the reliable methodology required by Daubert. "[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist." Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315–16 (9th Cir. 1995). Likewise, a conclusory diagnosis cannot be deemed reliable simply because it was provided by a qualified psychiatrist. Likewise, Dr. Casanova's assertion that Plaintiff's sexual harassment claims are "suspicious" is inadmissible for improperly informing the jury that it should conclude that Plaintiff's testimony is not credible, instead of providing the jury with the tools to reach its own conclusions regarding credibility. Shay, 57 F.3d 126, 131 (1st Cir. 1995).

The remaining portions of the report consist of Dr. Casanova's summary of the applicable legal standards and the facts of the case. There is no controversy regarding the inadmissibility of Dr. Casanova's summary of the legal standards. Given that the fundamental portions of the report have been stricken, Dr. Casanova's summary of the facts is rendered inadmissible and cumulative in the absence of any expert opinions. *See* Tchatat, 315 F.R.D. at 445. It is worth mentioning that the summary of facts is plagued with disparaging statements aimed at Plaintiff and conclusions beyond the scope of Dr. Casanova's expertise.

Particularly glaring examples of this are Dr. Casanova's "opinions" regarding Jelú's qualifications. Specifically, Dr. Casanova states that Jelú was not qualified for the Attorney III position and that she attained her employment positions "based on trust rather than merit" (Docket No. 252-2 at 9 and 11). Although Dr. Casanova's qualifications as an expert psychologist are not in question, the Court cannot conclude that she is qualified to opine regarding the Municipality's employment decisions or Jelú's professional merits.

The Court must conclude that the totality of the Municipality's proffered expert testimony would not assist the trier of fact in this case. Dr. Casanova's opinions are conclusory and lack the specialized knowledge and reliable methodology required by Fed. R. Evid. 702. Moreover, the report even fails to comply with its basic stated purpose: "render an opinion in relation to acclaim for emotional damages." (Docket No. 252-2 at 1). In accordance with the above, Plaintiff's *Motion in Limine to Exclude the Report and Proffered Testimony Of Dr. Cynthia Casanova Pelosi* at Docket No. 252 is **GRANTED.**

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 10th day of October 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge